IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LACHAUNTI WILLIAMS )<br>    Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    Respondent. ) | No. 3:23-cv-00309<br>Judge Trauger / Frensley |

## REPORT AND RECOMMENDATION

In 2022, Petitioner Lachaunti Williams was sentenced to forty-eight months in federal custody as a result of three violations of the terms of a supervised release agreement. 3:09-cr-00240, Doc. No. 3524. Mr. Williams since filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct this sentence based on "ineffective assistance of counsel" and an "illegal sentence." 3:23-cv-00309, Doc. No. 1. For the reasons that follow, and ultimately because the issue is now moot following Mr. Williams' release, the Court will recommend Mr. William's petition be DENIED.

## I.    BACKGROUND

### A.    Underlying Case

On April 9, 2014, Mr. Williams (hereinafter "Petitioner") was sentenced to 164 months of imprisonment based on a jury conviction on five counts of a Tenth Superseding Indictment and a guilty plea to two counts of an Eleventh Superseding Indictment in the underlying criminal case. 3:09-cr-00240, Doc. Nos. 2620, 2272, and 2581. Included in these 164 months was the approximately four and a half years that the Petitioner had already been in custody while awaiting trial, and the sentence would be followed by three years of supervised release. Doc. Nos. 2756, 2621. Importantly, two of the counts to which Petitioner pled guilty were knowing possession of

a firearm in furtherance of a crime of violence and conspiracy to commit a Hobbs Act robbery. Doc. No. 2468.

In June of 2019, the Supreme Court of the United States' ruling in *United States v. Davis* caused this Court to conclude that Petitioner's knowing possession of a firearm could not be considered a "crime of violence," and the two counts to which he pled guilty were vacated. Doc. No. 3312. This Court then ordered resentencing on the remaining convictions. Doc. No. 3312. In December 2019, in light of his time in custody to that point, Petitioner was sentenced to time served and three years of supervised release. Doc. No. 3329.

### B. Supervised Release Violations

While on supervised release following this resentencing, Petitioner tested positive twice for use of illegal drugs in February 2020 (Violation 3). Doc. Nos. 3348, 3349. In May 2021, Petitioner was charged by state police for Aggravated Assault with a Deadly Weapon (Violation 2). Doc. No. 3464. In August 2021, Petitioner possessed a firearm (Violation 1) and was found to be in possession of cocaine, marijuana, a digital scale, and five bottles labeled "Prometh VC with Codeine" (Violation 4). Doc. No. 3477. Petitioner was arrested and detained in federal custody in August 2021 for these four violations of his supervised release conditions. Doc. 3475.

Throughout the time leading up to his sentencing for these supervised released violations, Petitioner had issues with his appointed counsel. In August 2021, a first attorney, John Oliva, was appointed to represent Petitioner. Doc. No. 3474. By December 2021, Petitioner had "asserted that he [was] not able to trust [Mr. Oliva]'s decisions or advice concerning representation in his cases." Doc. No. 3501. On December 16, 2021, Stephanie Ritchie Mize was appointed to represent Petitioner. Doc. No. 3504. On January 19, 2022, Petitioner wrote to the Court that Ms. Mize had not appeared at multiple hearings or for a virtual meeting with Petitioner, or in general discussed

the case, and again requested a new attorney. Doc. No. 3511. The Court ordered Ms. Mize to repair the relationship with Petitioner. Doc. No. 3512. On April 26, 2022, the Court approved the parties' agreement to a sentence of forty-eight months for the supervised release violations. Doc. No. 3523.

In April 2022, Petitioner pled guilty to Violations 1, 3, and 4. Doc. No. 3524. This Court ordered Petitioner to serve forty-eight total months in federal custody for violation of his supervised release. Doc. No. 3523. Twenty-four months of that time was due to Violation No. 1, possession of a firearm. Doc. No. 3524. Twelve months of that time was due to Violation No. 3, unlawful use of control substances. Doc. No. 3524. And twelve months of that time was due to Violation 4, unlawful possession of controlled substances. Doc. No. 3524. The Court ordered these terms should run consecutively with no supervision to follow. Doc. No. 3524. According to the Bureau of Prisons website and recent news reporting, Petitioner was released from custody on January 6, 2025, following completion of this sentence.

    **C.**    **Habeas Petition Claims**

Beginning in June 2022 shortly after his sentence began, the Court received five letters from Petitioner detailing concerns he had with his treatment and conditions while incarcerated. Doc. Nos. 3529, 3536, 3547, 3604, and 3619. In response, the Court mailed Petitioner various Information Sheets containing information such as how to file a Petition for a Writ of Habeas Corpus, how to begin a Pro Se Civil Rights Action, and a Complaint for Violation of Civil Rights (Prisoner). Doc. Nos. 3539, 3619. On April 7, 2023, the Court received this instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter "§ 2255 Motion"). 3:23-cv-00309, Doc. No. 1.

Petitioner's § 2255 Motion raised two primary issues: (i) ineffective assistance of counsel and (ii) illegal sentence. Doc. No. 1. Under ineffective assistance, Petitioner wrote that issues with

3

his attorney included (i) lack of request for time served on probation; (ii) failure to file a direct appeal; and (iii) representation of a co-defendant who had conflicting interests. Doc. No. 1. Regarding the illegal sentence, Petitioner disputed (i) the consecutive, rather than concurrent, running of sentences for the supervised release violations. Doc. No. 1. Further, he argued the Court (ii) "did not adhere to the [§] 3553(a) sentencing factors" and that (iii) the "guideline for the probation violation was more than the time [he] was sentenced to." Doc. No. 1.

## II. APPLICABLE LAW AND ANALYSIS

To succeed on a § 2255 claim, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial or injurious effect or influence on the guilty plea or the jury's verdict." 28 U.S.C. § 2255; *Humphress v. United States*, 398 F. 3d 855, 858 (6th Cir. 2005) (citing *Griffin v. United States*, 330 F. 3d 733, 736 (6th Cir. 2003)).

### A. Ineffective Assistance of Counsel

One such grave error would be the ineffective assistance of counsel because criminal defendants have the right to effective counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (emphasizing the Sixth Amendment right to counsel is the right to *effective* counsel). Petitioner made three claims of ineffective assistance of counsel in his petition, stating that his counsel (i) failed to request "the courts to grant [him] time" served on supervised release; (ii) failed to file a direct appeal; and (iii) represented a co-defendant "on the case which [he] was on probation for" who had conflicting interests. Doc. No. 1. The petition is arguably ambiguous as to whether Petitioner raises these first two issues with respect to his initial conviction or supervised release revocation, so this Court analyzes the first two issues in both contexts. The third issue must be about the revocation proceeding because it refers to a conflict of interest with a defendant from a prior case, the underlying conviction.

4

### 1. If the Claim is Regarding the Supervised Release Revocation

The Court first addresses Petitioner's claims for ineffective assistance counsel as if Petitioner's claims were for ineffective assistance during the supervised release revocation proceedings. While the Supreme Court has not held defendants are entitled to counsel in all revocation proceedings, Congress has mandated as such in the federal context. *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (holding "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system"); *but see* 18 U.S.C.A. § 3006A(a)(1)(E) ("Representation shall be provided for any financially eligible person who—(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release"). The Government argues that such a guarantee of counsel does not require effective counsel, just counsel at all. Doc. No. 10 at 14. The Sixth Circuit has not yet ruled on this issue. *United States v. Lofton*, 810 F. App'x 436, 442 (6th Cir. 2020) ("We note at the outset that although financially eligible defendants do have a statutory right to counsel at revocation hearings . . . it is not clear 'whether [defendants] ha[ve] a constitutional right to effective assistance of counsel at a revocation hearing'") (citing *England v. United States*, 2017 WL 9248942, at *2 (6th Cir. Nov. 7, 2017)).

Even should Petitioner have a right to effective assistance of counsel, he fails to meet the high bar required to demonstrate ineffective assistance of counsel stemming from *Strickland*. *Strickland v. Washington*, 466 U.S. 668 (1984). "*Strickland* says that in order to succeed in an ineffective-assistance-of-counsel claim, a petitioner must show that counsel acted 'outside the wide range of professionally competent assistance' such that the petitioner was prejudiced.'" *Kelly v. Lazaroff*, 846 F. 3d 819, 829 (6th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 690

5

(1984)). This standard is "extremely deferential" because counsel is permitted to make strategic choices given their perspective at the time of such decisions. *Id.* "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. at 830 (citations omitted).

### a. Grant of Time Served

First, Petitioner wrote he "instructed [his] attorney to request the courts to grant me the time that I completed on probation which she did not do." Doc. No. 1. Reading this based on the revocation proceedings, it seems Petitioner alleges that his attorney was ineffective because she failed to request his sentence be shortened by the amount of supervised release he already completed. However, 18 U.S.C. § 3583 states that when a defendant violates their supervised release "the court may . . . (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision." 18 U.S.C. § 3583(e)(3). Because this statute shows the court may convert the supervised release to time in custody "without credit for time previously served," it is unlikely that Petitioner's counsel failing to request the court not do so meets the high bar for ineffective counsel imposed by *Strickland*.

### b. Failure to File a Direct Appeal

Secondly, Petitioner stated he requested that his attorney "file a direct appeal, which she did not do." Doc. No. 1. Under the Federal Rules of Appellate Procedure, Petitioner had 14 days after the revocation hearing to file his appeal. FRAP 4(b)(1)(A). Petitioner could have made a motion for extension of time under the same rules when his attorney failed to file an appeal on his

6

Case 3:23-cv-00309   Document 20   Filed 12/01/25   Page 6 of 12 PageID #: 82

behalf, but did not do so. FRAP 4(b)(4). To grant an extension of time, the district court would have had to find "excusable neglect or good cause." FRAP 4(b)(4). The Sixth Circuit has held when "when a moving party contends that a circumstance outside his control prevented him from filing a timely notice of appeal, he must provide details about that prohibitive circumstance." *United States v. Douglas*, 746 F. App'x 465, 467 (6th Cir. 2018). Although Petitioner corresponded with the court shortly after his imprisonment following his supervised release violation, he did not timely appeal his conviction nor present "excusable neglect or good cause" for an extension of time. 3:09-cr-00240, Doc. No. 3530.

      c.     **Conflict of Interest**

Lastly, Petitioner alleges his "attorney represented one of [his] codefendants who gave statements against [him] to the government on the case which [he] was on probation for after my release from prison." 3:23-cv-00309, Doc. No. 1. Reviewing this as an issue for revocation proceedings, as the Government notes, this would be "at most a claim of 'successive representation,' not 'multiple concurrent representation,' " because Petitioner is taking issue with his counsel's representation of his co-defendant in the underlying conviction and himself in the following revocation hearing. Doc. No. 10 (citing *Stewart v. Wolfenbarger*, 468 F. 3d 338 (6th Cir. 2006)). The *Strickland* standard is the appropriate test for successive representation. Doc. No. 10 (citing *Stewart v. Wolfenbarger*, 468 F. 3d 338 (6th Cir. 2006)). Petitioner does not make allegations about how his attorney's prior representation impacted his revocation in a manner "outside the wide range of professionally competent assistance," but only takes issue with the successive representation itself. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Successive representation is not categorically disallowed, and so this claim fails to meet the *Strickland* standard. *Id.*

7

Petitioner thus does not make a successful argument for ineffective assistance of counsel during his revocation proceedings due to any of: (i) lack of request for time served on probation; (ii) failure to file a direct appeal; and (iii) representation of a co-defendant who had conflicting interests. Doc. No. 1.

## 2. If the Claim is Regarding the Underlying Conviction

Because it is arguably uncertain from the petition whether Petitioner intends to claim ineffective assistance of counsel based on (i) lack of time served or (ii) failure to appeal on the matter of his supervised release revocation or regarding his underlying conviction, this Court next analyzes the issues in the context of the underlying conviction. While there are open questions about the right to effective counsel in revocation proceedings based on *Lofton*, Petitioner has a right to effective assistance of counsel in criminal cases under *Strickland*. *United States v. Lofton*, 810 F. App'x 436, 442 (6th Cir. 2020); *Strickland v. Washington*, 466 U.S. 668 (1984).

### a. Inclusion of Time Served

First, Petitioner requests relief because his counsel did not request the inclusion of time served on "probation" in his sentence. Doc. No. 1. This claim appears untrue or at least otherwise resolved in the underlying conviction because at Petitioner's resentencing after *Davis*, he was released on time served. 3:09-cr-00240, Doc. No. 3336. It is more likely the claim is about the revocation proceedings, which are addressed above.

### b. Failure to File a Direct Appeal

Secondly, Petitioner claimed ineffective assistance counsel based on the fact that his attorney did not file a direct appeal. 3:23-cv-00309, Doc. No. 1. Regarding the two counts on which Petitioner pled guilty in the underlying conviction, Petitioner's plea agreement in the underlying case includes an explicit wavier of his appellate rights. 3:09-cr-00240, Doc. No. 3581

8

at 16 ("defendant hereby waives (i) all rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which is agreeing to plead guilty"). Petitioner did not waive his right to appeal his sentence (Doc. No. 3581 at 16), but in fact successfully had his sentence reduced to time served following the *Davis* decision, so counsel was not ineffective on this point. Doc. No. 3336. Because Petitioner waived his right to appeal his conviction but successfully appealed his sentence in the underlying case, his attorney's failure to appeal also does not constitute ineffective assistance of counsel in the context of the underlying conviction.

### B. Illegal Sentence

Unlike the ineffective assistance claim, and perhaps supporting a reading that such a claim was made regarding the revocation proceedings, Petitioner's second claim for "illegal sentence" is regarding his sentencing after his violation of supervised released. Petitioner specifically wrote that: (i) his sentences for the three supervised release violations should have run concurrently, rather than consecutively; (ii) "the court did not adhere to the [§] 3355(a) sentencing factors of the [S]enticing [R]eform [A]ct when [he] was sentenced for the probation violation;" and (iii) "[his] guideline for the probation violation was more than the time [he] was sentenced to for probation." 3:23-cv-00309, Doc. No. 1.

An "illegal sentence" could warrant relief because the Eighth Amendment protects against cruel and unusual punishment. U.S. Const. amend VIII. An illegal sentence would warrant amending or vacating Petitioner's sentence under § 2255 if he demonstrates "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However:

> A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not

substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. United States v. Harris, No. 1:22-CR-335-1, 2024 WL 3012835 (N.D. Ohio June 14, 2024) (citing Green v. Wingo, 454 F.2d 52, 53 (6th Cir. 1972); O'Malley v. United States, 285 F.2d 733, 735 (6th Cir. 1961)).

Because Petitioner only makes the "vague and conclusory claims" listed above without additional facts, he likely has not met his burden on his claims of illegal sentencing.

Additionally, Petitioner's claims are procedurally defaulted because he did not appeal them. However, a court can excuse this default if a defendant demonstrates "cause," "actual 'prejudice,' " or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). This court analyzes each of Petitioner's claims for such significant issues, but does not find any based on the lack of detailed allegations sufficient to support such findings.

Petitioner's first claim that his sentences should have run concurrently does not warrant relief because it is up to a court's discretion whether to run a sentence consecutively or concurrently. *United States v. Dear*, No. 22-5647, 2023 WL 3093875 (6th Cir. Apr. 26, 2023) (citing *Setser v. United States*, 566 U.S. 231 (2012)). A defendant can challenge a district court's decision on this front for abuse of discretion, but Petitioner does not allege issues such as procedural errors or incorrect calculation which might indicate such abuse. *United States v. Studabaker*, 578 F. 3d 423 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38 (2007)).

Regarding the Court's adherence to the § 3553(a) factors and sentencing Guidelines, these decisions are also discretionary. 18 USC § 3553(a) requires a court to consider seven factors and various sub factors when determining the appropriate sentence. Similar to the concurrent versus consecutive sentencing decision, the Court is granted significant deference in this decision. *Gall v. United States*, 552 U.S. 38, 39 (2007). *Gall* outlines the process of determining the appropriate

sentence: First, "[a] district court should begin by correctly calculating the applicable Guidelines range." *Id.* Then, the court should weigh the § 3553(a) factors and should "not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Id.* In reviewing a sentencing decision, an appellate court applies an "abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the § 3553(a) factors justify the variance." *Id.* Because Petitioner does not point to an error beyond the Court using its discretion in sentencing, this claim does not warrant relief.

        C.        **Regardless of the Merits of the Claims Above, the Petition is Now Moot**

Ultimately, regardless of the merits of the ineffective assistance or illegal sentence claims above, Petitioner's claims are moot because he has since been released and he has not alleged "collateral consequences" resulting from his supervised release revocation sufficient to meet the requisite standard. In the Sixth Circuit, while "a petitioner's habeas challenge is not necessarily mooted by the petitioner's release from incarceration so long as the petitioner can demonstrate 'collateral consequences' that follow from his conviction and remain ongoing," the burden is on Petitioner to demonstrate such consequences are "concrete injuries or deprivations that are consequences" of the alleged wrongs. *Demis v. Sniezek*, 558 F. 3d 508, 515–16 (6th Cir. 2009). The Supreme Court has rejected as collateral consequences concerns such as risk of a parole revocation being used "to [a defendant's] detriment in a future parole proceeding," "to increase his sentence in a future sentencing proceeding," "to impeach him should he appear as a witness or litigant in a future criminal or civil proceeding; or . . . against him directly, pursuant to" the Federal Rules of Evidence. *Spencer v. Kemna*, 523 U.S. 1, 14–16 (1998). While a criminal conviction may cause collateral consequences such as removal or deportation, these consequences would stem

from an unlawful or erroneous conviction, rather than an illegal sentence such as Petitioner is arguing. *See Pola v. United States*, 778 F. 3d 525 (6th Cir. 2015). Petitioner thus does not make such particularized allegations of collateral consequences sufficient to show his claims should not be considered moot.

### III. CONCLUSION

For the reasons discussed above, the undersigned recommends that relief under 18 U.S.C. § 2255 be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**